UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:16cr96 (MPS) |
| | : | |
| v. | : | August 15, 2017 |
| | : | |
| BRANDON WILLIAMS | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Brandon Williams facilitated the prostitution of a seventeen-year-old girl who, when recovered by the police, had a tattoo of a dollar sign on her face and a tattoo of Williams' nickname, "14K," on her neck. The victim had been passed from another pimp to Williams, whose email address and phone number were used in advertisements for the victim's commercial sexual services. When the victim was recovered by the police, she said: "I will never be the same because of 14K and Boots [the other pimp]."

For the reasons set forth herein, the Government respectfully requests that the Court impose a fair and just sentence of imprisonment, following by a lengthy term of supervised release, on Williams.

**I.    OFFENSE CONDUCT**

As set forth in the Presentence Report ("PSR"), Williams was charged by a federal grand jury on May 17, 2016, with one count of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), (b)(2), and (c), and one count of sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1). He entered a guilty plea to Count One of the Indictment, charging him with sex trafficking of a minor, on March 3, 2017. The facts of his offense are as follows.

1

Minor Victim

The minor victim ("MV") in this case, who was seventeen at the time of the relevant events, is the same person identified as Minor Victim 1 in the case of <u>United States v. Jason Prawl</u>, D. Conn. Crim. No. 16cr189 (MPS) (related case).

It is undisputed that when MV came to the Sunnyside Inn, she began to work in prostitution for Prawl. PSR ¶¶ 7, 28. She would see clients at the Sunnyside Inn, and Prawl would also take her to various strip clubs in the Bridgeport area to dance and see prostitution customers. PSR ¶¶ 8-9. Prawl provided MV with a fake Maryland driver's license stating that she was 24 years old, when she was in fact seventeen. PSR ¶ 9. According to MV, Prawl abused her while she was with him. PSR ¶ 10.

During the time when MV was working for Prawl, she would visit Williams, who was staying in another room at the Sunnyside. PSR ¶ 12. MV stated that Williams was nice to her, so she tried to find ways to spend time with him. PSR ¶ 12. MV told Williams about the physical abuse Prawl inflicted on her. PSR ¶ 30. MV stated that Williams would provide drugs to Prawl to give to MV, and would also give MV drugs directly. PSR ¶ 12. Prawl would summon MV back from Williams' room to see prostitution customers. PSR ¶ 30. At some point during MV's time with Prawl, a "silver alert" was issued for her by law enforcement because she was a missing juvenile. PSR ¶ 13. MV believed that Prawl did not want to associate with her after she was identified as a missing juvenile. PSR ¶ 13. According to MV, Prawl sold her to Williams for $500. PSR ¶ 13. Ultimately, MV left the motel and Williams picked her up a few blocks away. PSR ¶ 31.

At that point, MV began to stay with Williams.  They first stayed at the Howard Johnson in Milford, where he rented a room in another person's name because he knew he had outstanding arrest warrants.  PSR ¶ 32.  Williams had sex with MV at the Howard Johnson.  PSR ¶ 32.  The pair then moved to the Honeyspot Motel in Stratford where, according to Williams, MV began to post herself on Backpage using one of his phones.  PSR ¶ 33.  Williams claimed that he had not heard of Backpage or Cityvibe, the websites on which MV's commercial sexual services were advertised, until MV introduced him to them.  PSR ¶ 33.  Williams admitted to purchasing prepaid debit cards sot that he could pay for Backpage ads for MV's services, but he claimed he never actually purchased any ads.  PSR ¶ 33.  He stated that sometimes MV would give him the money she earned in prostitution, sometimes she would put the money toward the hotel room rental, and other times she would keep the money for herself.  PSR ¶ 33.  Williams estimated that she saw approximately 2-3 clients per day, and sometimes fewer, when she was with him.  PSR ¶ 33.  After staying at the Honeyspot motel, they moved to two different hotels in the Bronx.  MV saw prostitution customers in the Bronx.  PSR ¶ 34.

Backpage records show that between August 6th and 22nd, 2015, 16 ads were posted for MV's sexual services in both Connecticut and New York. PSR ¶ 15.  The ads each have three photographs, none of which depict MV's face, but she identified the photos as depicting her.  PSR ¶ 15.  One of the photographs shows a distinctive thigh tattoo of MV's. PSR ¶ 15.  The ad posted on August 6th is associated with Williams's email address. PSR ¶ 15.  Cityvibe also provided records in the investigation showing that one ad depicting MV was posted on August 24, 2015. PSR ¶ 15.  That ad was posted by another email address of Williams's and bears the

3

same photographs as the Backpage ads. PSR ¶ 15. The phone number in the ads was associated with a phone used by Mr. Williams. PSR ¶ 15.

After their time in the Bronx, Williams and MV returned to the Sunnyside Inn in Bridgeport. PSR ¶ 35. Prawl was no longer staying there. PSR ¶ 35. MV became depressed and started using drugs heavily to escape from her situation. PSR ¶¶ 17-18. She also admitted that she tried to commit suicide by cutting herself. PSR ¶ 17. According to MV, Williams forced her to get two tattoos on her face and neck: a dollar sign on her cheek and the numbers and letter "14K" on her neck, to show her association with Williams. PSR ¶ 18. Williams, on the other hand, stated that MV wanted to get those tattoos and he did not force her to do so. PSR ¶ 35.

Officers of the Bridgeport Police Department recovered MV from a Sunnyside Inn room rented in Williams' name after receiving reports from confidential informants that there was a girl in the room with a dollar sign tattoo on her face and a tattoo of "14K" on her neck who was not allowed to leave the motel room. PSR ¶ 19. MV was very emotional when the police arrived, saying, among other things: ""I don't feel pretty anymore, I'm ugly, I feel like a whore, I've slept with over 50 to 60 dirty men even 3 at a time, I can't believe I had sex with so many men, I can't believe he wouldn't let me shower after having sex with all these guys, I can't believe that 14K would make me have sex with all these men and then tell me he loves me, I can't believe that 14K was drugging me with morphine and crack, I've thought about killing myself, I can't believe 14K would lock me in the bathroom for hours when he would leave by putting furniture in front of the door." PSR ¶ 23. She also said: "I will never be the same because of 14K and Boots." PSR ¶ 23.

4

## II. PROCEDURAL HISTORY AND GUIDELINES CALCULATION

On May 17, 2016, a federal grand jury sitting in New Haven, Connecticut, charged Williams with one count of sex trafficking of a minor, which carries a 10-year mandatory minimum term of imprisonment, and one count of sex trafficking by force, fraud, or coercion, which carries a 15-year mandatory minimum term of imprisonment.

On March 3, 2017, Williams entered a plea of guilty to Count One of the Indictment, alleging sex trafficking of a minor.  PSR ¶ 1.  The Guidelines calculation from both the plea agreement and the PSR is as follows:  the base offense level for each count is 30, pursuant to U.S.S.G. § 2G1.3(a)(2).  That level is increased by two pursuant to U.S.S.G. § 2G1.3(b)(3)(B) because each offense involved the use of a computer to entice, encourage, offer, or solicit a person to engaged in prohibited sexual conduct with a minor, and by two because the offense involved the commission of a sex act or sexual conduct, pursuant to U.S.S.G. § 2G1.3(b)(4).[1]

---

[1] Under 18 U.S.C. § 1591, a sex act does not have to be completed to establish a violation of the statute.  See *United States v. Wearing*, 2017 WL 3167338, *3 (7th Cir. July 26, 2017) ("Nothing in the statute signals that the plan [to prostitute the minor] must be fully carried out before conviction is possible."); *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) ("And '[t]he future verb tense of the phrase 'will be caused'—which precedes 'to engage in a commercial sex act'—indicates that a sex act does not have to occur to satisfy the elements of the child-sex-trafficking-offense. … Willoughby's offense was complete when he acted with the requisite knowledge—when he dropped [the victim] off at [a customer's residence], for example,—and not at the moment of penetration."), quoting *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013); *see also United States v. Jungers*, 702 F.3d 1066, 1073-74 (8th Cir. 2013) (noting that a prostitution customer can be convicted for committing an act prohibited by § 1591, such as transporting a minor, without actually engaging in a sex act if the act was done with knowledge or reckless disregard of the fact that the minor would be caused to engaged in a commercial sex act).  However, recognizing that the completion of sex acts is common in this type of case, the Government in this district typically seeks the enhancement for commission of a sex act or sexual contact when the defendant has had sex with the minor victim, which was the case here with Williams and MV.

The adjusted offense level for each count is thus 34. After three levels are subtracted for acceptance of responsibility, the adjusted offense level is 31.

The plea agreement had contemplated that Williams fell into Criminal History Category ("CHC") IV, but the Probation Office believes he is in CHC V. PSR ¶ 66. With an offense level of 31 and a CHC V, the Guidelines range is 168-210 months of imprisonment. While the Government concurs with the Probation Office's criminal history calculation, the Court may wish to consider a downward departure pursuant to United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989) to give effect to the plea agreement, which calculated the Guidelines range as 151-188 months' imprisonment and a fine range of $30,000 to $300,000.

### Restitution

MV is entitled to restitution from Williams under 18 U.S.C. §§ 3663A and 1593. The Government's estimate of restitution owed to MV is $2,475. See United States v. Mammedov, 304 Fed. App'x. 922, 927 (2d Cir. Dec. 30, 2008) (summary order) ("[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, i.e., persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct."); PSR ¶ 38.

### III.   SENTENCING FACTORS

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
(5) any pertinent policy statement [issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Government respectfully requests that the Court impose a fair and just sentence of imprisonment that is consistent with the purposes of Section 3553(a). The offense of sex trafficking of a minor is serious. A child can never be a willing participant in prostitution, as she cannot consent to her own exploitation. See, e.g., *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims."). If, as Williams argues, he disapproved of MV's work in prostitution and loved her, he should have taken steps to get her out of that environment—rather than plying her with drugs

7

and holding her in a room where she was not free to leave, as multiple witnesses reported to police.

Williams's long criminal history and attempts to evade detection while he was working with MV should also be considered by the Court in fashioning an appropriate sentence. A significant period of incarceration is necessary to deter Williams from committing further criminal acts and to protect the public from crimes he may commit in the future.

## V.  CONCLUSION

For the reasons discussed herein and in the Government's sealed sentencing filings, the Government respectfully requests that the Court impose a sentence of a fair and just term of imprisonment, a lengthy term of supervised release, and restitution to MV.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/ Sarala V. Nagala*

SARALA V. NAGALA
FEDERAL BAR NO. phv05529
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700
Sarala.Nagala@usdoj.gov

CERTIFICATE OF SERVICE

       This is to certify that on August 15, 2017, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                      /s/_____
                                      Sarala V. Nagala
                                      Assistant U.S. Attorney